IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JUSTIN RAY MONROE,<br>    #56787-177,<br>        MOVANT,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>        RESPONDENT. | §<br>§<br>§<br>§<br>§  CIVIL CASE NO. 3:21-CV-1833-D-BK<br>§    (CRIMINAL CASE NO. 3:18-CR-006-D-8)<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Justin Ray Monroe's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the motion should be **DENIED**.

**I.  BACKGROUND**

In 2019, Monroe pled guilty pursuant to a plea agreement to possession with intent to distribute a controlled substance and was sentenced to 211 months' imprisonment. Crim. Doc. 1553.[1] His direct appeal was dismissed as frivolous. Crim. Doc. 1692. On August 5, 2021, Monroe filed this timely § 2255 motion through his newly retained counsel, alleging ineffective assistance of counsel at sentencing. Doc. 1 at 7; Doc. 1 at 12-20 (Mem. in Support). The

---

[1] All "Crim. Doc." citations refer to the related criminal case, *United States v. Monroe*, No. 3:18-CR-006-D-8 (N.D. Tex. Sep. 12, 2019).

Government opposes § 2255 relief, Doc. 6, and Monroe has filed a reply reasserting the claims presented in his original memorandum in support. Doc. 9.

Upon review, the Court concludes that Monroe fails to establish ineffective assistance of counsel. His § 2255 motion should therefore be denied.

## II. ANALYSIS

To succeed on an ineffective-assistance-of-counsel claim, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Thus, "[i]f a tactical decision is 'conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (citing *Crane v. Johnson,* 178 F.3d 309, 314 (5th Cir. 1999)). Consequently, a "mere disagreement about tactics does not amount to a constitutional

infirmity." *United States v. Allen*, 918 F.3d 457, 461 (5th Cir. 2019) (citing *Strickland*, 466 U.S. at 690).

Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the sentencing context, the movant must demonstrate that the sentence was increased by the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

### A. Counsel's Failure to Communicate

Monroe asserts that his counsel was ineffective in failing to adequately communicate with him, effectively denying him the right to participate in his defense and prepare for sentencing. Doc. 1 at 17-18. He complains that counsel failed to provide him access to discovery and to meet with him to plan PSR objections and mitigating evidence to be presented at sentencing. Doc. 1 at 17-18. Monroe contends that counsel left him "completely in the dark," and as a result, Monroe "had little idea, if any, about what was going on with his case." *Id*. The record belies these assertions, however.

At re-arraignment, Monroe assured the Court that his initial dissatisfaction with counsel based on lack of communication was no longer a problem, stating, "we got past that and we're on the same page now." Crim. Doc. 1609 at 4-5. Monroe also affirmed that he was satisfied with counsel and the representation and advice that he had received regarding the guilty plea. Crim. Doc. 1609 at 7. However, one month after the first objections to the presentence report (PSR) where filed, Monroe and his mother each wrote letters complaining of lack of communication with counsel and requesting a continuance of the sentencing hearing and new counsel. Crim. Doc. 1378; Crim. Doc. 1379. Shortly thereafter, counsel filed a motion for a 90-

day continuance of the sentencing hearing, which the Court promptly granted. Crim. Doc. 1384; Crim. Doc. 1388. Counsel then presented revised objections to the PSR. Crim. Doc. 1454; Crim. Doc. 1493. And Monroe expressed no further concerns about counsel's lack of communication. At sentencing, Monroe confirmed that he had sufficient time to read and discuss the PSR with defense counsel. Crim. Doc. 1610 at 4.

Apart from his self-serving assertions here, Monroe proffers nothing to meet the high burden of establishing that counsel's performance was deficient for failure to sufficiently consult with him about sentencing, or that counsel's purported failure prejudiced him. Indeed, Monroe suggests nothing additional that could or would have been offered at sentencing had further consultation with counsel taken place. "[B]revity of consultation time with the client does not establish a claim for ineffective assistance of counsel *unless* a defendant can show what benefit would have resulted from more consultation time." *United States v. Bernard*, 762 F.3d 467, 478 (5th Cir. 2014) (emphasis added and citation omitted). And as discussed in more detail below, Monroe wholly fails to demonstrate how additional meetings with counsel would have altered the outcome of his case and resulted in a lower sentence.

**B. Failure to Present Mitigating Evidence or Reasons for Departure/Variance**

Monroe asserts that defense counsel rendered ineffective assistance in failing to present sufficient mitigating evidence or bases for departure or variance. Doc. 1 at 18. He highlights that counsel did not file a sentencing memorandum, a motion for downward departure or variance, or character letters from family and friends. *Id.* And while counsel called Monroe's mother and stepfather as witnesses at sentencing, Monroe contends that, *inter alia*, they were not sufficiently prepared. Doc. 1 at 18-19. Monroe also maintains that counsel should have argued in a sentencing memorandum or a motion for a downward departure or variance that (1) his

"criminal history score overstate[d] the seriousness of [his] criminal history" and (2) he received two additional criminal history points for his Collin County misdemeanor offenses simply because they were not resolved on the same day. Doc. 1 at 19-20. Monroe further argues that counsel should have explained to the Court that "virtually all of his [prior] offenses involved [controlled] substances or property crimes committed in the furtherance of supporting his substance abuse" and otherwise, "his offense history was generally devoid of weapons or violent acts." Doc. 1 at 20. Once again, the record refutes Monroe's claims, however.

In the context of preparing for sentencing, "investigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence . . . .'" *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citations omitted). Even so, "the failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice." *Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984). "There are no 'strict rules' for counsel's conduct beyond 'the general requirement of reasonableness.'" *Trottie v. Stephens,* 720 F.3d 231, 242 (5th Cir. 2013).

Contrary to Monroe's assertions, the Court was very familiar with, and carefully weighed, the other circumstances Monroe now argues counsel should have presented before or at sentencing. Crim. Doc. 1610 at 17-18. The PSR detailed Monroe's extensive criminal history and substance abuse, his good work for his stepfather's landscaping company, and the existence of an infant son, whom Monroe had not met yet. Crim. Doc. 1280-1 at 14-25, 28-29. Also, at sentencing, Monroe's mother and stepfather reiterated that he was a "good man" with a "good heart" and a "good worker," who had an addiction problem that caused him to engage in criminal activity. Crim. Doc. 1610 at 14-15. His mother asked the Court "to not just look at [Monroe] on black and white." *Id*. Monroe's' stepfather also advocated for drug treatment, emphasized the

good work that he had done for his landscaping company, and mentioned Monroe's infant son. Crim. Doc. 1610 at 15. Based on this record, counsel's failure to present additional character letters or make arguments reiterating the same information was not prejudicial.

As to Monroe's contention that counsel should have argued that his criminal history score overstated the seriousness of his criminal history, he does not question the calculation of his criminal history score as category VI. Moreover, any argument that he would have had 24 criminal history points instead of 26 if his Collin County misdemeanor offenses had been resolved together, would have had no impact on his criminal history score. *See* U.S.S.G. Ch.5, Pt. A, *Sentencing Table.* (13 or more criminal history points qualifies for Criminal History Category VI). Further, Monroe omits that counsel presented other objections to the PSR that, if successful, would have altered Monroe's guideline range. *See* Crim. Doc. 1307; Crim. Doc. 1454; Crim. Doc. 1493 (requesting a mitigating role reduction and challenging the importation enhancement, purity level, drug-quantity determination, and drugs possessed for personal use). On this record, counsel's tactical decision to forego an argument challenging Monroe's criminal history was reasonable and, as such, did not fall outside the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689 (internal citations and quotations marks omitted).

Finally, in imposing the 211-month sentence in the middle of the 188-235 advisory guideline range, and not at the top of that range as the government had requested, the Court observed:

> One of the factors that the court is to consider in determining the sentence is the history and characteristics of the defendant. I recognize that the defendant and his family have requested that I not judge the defendant based only on what is on paper, and the court is able to consider all of the history and characteristics of the defendant, but it nevertheless remains true that the defendant at this point has

> already developed 26 criminal history points. That is double what is necessary to qualify for the highest category, the worse category that is, under the sentencing table, and represents a very high rate of recidivism. Indeed, that many criminal history points often serves as a basis to consider an upward departure or upward variance, and certainly, as the government has argued for, a sentence at the top of the advisory guideline range.
>
> But in addition to considering the reason for sentencing the defendant at the top of the range, I have considered the mitigating factors, that is, looking at the defendant as more than simply black and white on paper and deciding that a sentence lower than the top of the range, or even lower than an upward variance or departure, would be sufficient. Additionally, it is important to remember in these cases that regardless of the reason that the defendant distributed poison to the community, he nevertheless did that. In fact, in several of these -- with respect to several of these defendants in this case I've referred to them as wearing two hats, the hat of the victim as well as the hat of the violator and that while they are violators[,] they actually understand the victim side because they, themselves, have been addicted to a form of poison. But, again, regardless of why they are distributing poison, they are, and that's why these sentences are as severe as they are.

Crim. Doc. 1610 at 17-18.

In sum, nothing in the record suggests that the Court would have ruled differently at sentencing. Thus, Monroe cannot demonstrate that counsel's alleged deficient performance resulted in a higher sentence. *See Glover*, 531 U.S. at 203-04. His ineffective assistance claims therefore fail.

### III. EVIDENTIARY HEARING

Monroe requests an evidentiary hearing to develop and resolve his claims. Doc. 1 at 20-22. But "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States*

*v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))).  Because Monroe's claims lack merit for reasons supported by the record, as previously noted, no evidentiary hearing is necessary or required.

## IV. CONCLUSION

For the foregoing reasons, Monroe's § 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on April 19, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).